UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Gerald Halmond,

                                Plaintiff,

        v.

Commissioner of Social Security,

                              Defendant.

**Decision and Order**

18-CV-6337 HBS
(Consent)

## I. INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 9, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 10, 15.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that he was not entitled to Disability Insurance Benefits ("DIB") under Title II, or Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II. DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as

"'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

2

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

3

Plaintiff challenges the Commissioner's determination that he could meet the statutory definition of disabled only because of substance abuse. Specifically, plaintiff argues that the ALJ failed to distinguish his lapses into substance abuse from his long periods of sobriety:

> The ALJ's finding that Plaintiff would not be disabled but for the presence of substance abuse rests on Plaintiff's relapses, stating Plaintiff improved when compliant with medication and abstinent. T 27. The evidence, however, does not support the ALJ's finding in this regard. In this case, the evidence indicates that Plaintiff was sober for most of the alleged period of disability and Plaintiff received a significant amount of mental health treatment during this period of sobriety, to no point of improvement. When he was participating in group therapy at Rochester General Hospital Addiction Services in 2012 and 2013, he was also seeing the medical director, Dr. Seeger, for his mental health issues. T 700. The medical director diagnosed him with major depression, recurrent and moderate severity with possible psychosis. T 701. He was on a consistent medication regime, including serious antipsychotic medications, and had been sober for six months, yet Dr. Seeger still found him to be depressed, paranoid, and obsessive, with possible psychosis as he had hallucinations. T 700, 701. He had been sober for 10 monthsat the time he was having issues with the rules and supervisors at his transitional housing. T 706. When Dr. Seeger saw him again in March 2013, having maintained sobriety for nearly a year, depression was still the chief complaint and he still showed symptoms of depression and anxiety. T 727. He was still sober in April 2013 when Dr. Seeger had to prescribe Risperdal, an antipsychotic, for his increased hallucinations. T 738. He had a one-time relapse in June of 2013. T 748. From then on, he was sober and he received treatment for his depression from Dr. Jean-Jacques in 2014. This treatment focused on improving concentration and motivation. T 274, 284, 285, 295, 297, 302, 304, 320, 321. Dr. Jean-Jacques focused addressing social isolation and completing tasks, but did not address substance abuse because Plaintiff was consistently sober. Id.

(Dkt. No. 10-1 at 16–17; *see also* Dkt. No. 17 at 2.) The Commissioner responds by acknowledging that plaintiff had periods of sobriety, including one period that lasted 13 years. The Commissioner also points out, though, that plaintiff had so many relapses and arrests over the course of his life that the ALJ had to conclude that "off task" time and erratic attendance from substance abuse made him essentially unemployable:

> In the materiality analysis, the ALJ first determines whether the claimant is disabled considering all his limitations, including those caused by substance use. See 20 C.F.R. §§ 404.1535(a), 416.935(a). Here, the ALJ found that the record supported the severe impairments of substance addiction, depression, and anxiety (Tr. 19). As

4

the ALJ discussed, the record documents a long history of substance abuse (Tr. 19, 21-27). According to Plaintiff's statements during the course of treatment, he began drinking alcohol as early as age 7; later used cocaine, heroin, and other drugs; and dealt drugs and stole to support his drug use, resulting in an estimated 40 arrests and 2 felonies (Tr. 274-75, 401-03, 409, 432). Plaintiff reported past periods of sobriety, including one lasting 13 years, before returning to substance abuse (Tr. 403, 411). After relapsing following a release from prison in April 2012, six months before he filed for disability, he sought substance abuse treatment, but the record indicates additional relapses in April 2013, June 2013, December 2015, and October 2016 (Tr. 275, 401-02, 409-11, 416-17, 443, 647, 665, 748).

As the ALJ observed, treatment providers continued to express concern about Plaintiff's substance abuse disorder even between relapses (Tr. 23). For example, in March 2013, Plaintiff reported no relapses following his release from jail three months earlier, but Dr. Seeger continued to list a treating diagnosis of polysubstance dependence in conjunction with recurrent major depression and OCD (Tr. 23, 727). In two employability questionnaires, from December 2013 and May 2014, Mr. Smith listed diagnoses of alcohol dependence, cocaine dependence, and cannabis dependence, in addition to reports of depression and anxiety, and found that he should be restricted to environments in which he was not exposed to alcohol or drug use (Tr. 24, 367-68, 371-72). At Plaintiff's initial visit with Dr. Jean-Jacques, in January 2014, he admitted that he had not worked for the prior seven years because he was using drugs and depressed (Tr. 24, 275). He continued to receive treatment in a substance abuse program (Tr. 24, 275). Plaintiff was noted to make progress during therapy with Ms. Alston from January 2015 until her departure from Catholic Family Center six months later, when his attendance declined leading to his relapse at the end of the year (Tr. 25, 476). He terminated mental health treatment against clinical advice in February 2016 (Tr. 476). The record shows no further mental or substance abuse treatment until October 2016, when he began chemical dependency treatment at Huther Doyle, testing positive for cocaine, alcohol, and opiates (Tr. 401-01, 417, 443). He was discharged from substance abuse treatment the following month after failing to return phone calls (Tr. 443).

The evidence thus amply supports the ALJ's determination that Plaintiff's substance abuse was material to the determination of disability (Tr. 27). When considering Plaintiff's mental impairments together with his substance abuse, the ALJ found that he had the RFC to perform a full range of work at all exertional levels in which he could adjust to occasional changes in the work setting; make occasional, simple work-related decisions; perform simple, unskilled tasks; and fulfill daily goals but not maintain a fast-paced, automated production rate pace (Tr. 23). Additionally, he could interact with the public at DOT people function levels six for speaking and signaling, seven for serving, and eight for helping and taking instructions; but he could not perform teamwork or tandem work (Tr. 23). Lastly, the ALJ found that, with substance use, Plaintiff would be occasionally off task (Tr. 23). The ALJ explained that "[t]he restriction to being occasionally off task is replete throughout the record when the claimant is using substances but abates when he

5

stops use and is compliant with care" (Tr. 27). Relying on vocational expert testimony, the ALJ found that Plaintiff was unable to perform any jobs in the national economy and therefore disabled when including his substance use disorders (Tr. 28-29, 79-81).

(Dkt. No. 15-1 at 15–20.)

"An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also* 42 U.S.C. § 1382c(a)(3)(J) ("Notwithstanding subparagraph (A), an individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."). The regulations for DIB and SSI explain the process by which the Commissioner will determine how substance abuse contributed to a potential disability:

> The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
> If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>
> If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535(b) (DIB); *see also* 20 C.F.R. § 416.935(b) (SSI). The burden of ruling out substance abuse as a contributing factor falls on the claimant. *Cage v. Comm'r*, 692 F.3d 118, 123 (2d Cir. 2012).

6

Here, substantial evidence supports the ALJ's determination that plaintiff did not meet his burden. On February 13, 2014, plaintiff's primary care physician, Dr. Ronald Guzman, communicated with one of his psychologists, Dr. Christine Jean-Jacques. [282.] According to Dr. Jean-Jacques, "Dr. Guzman states that there is not a medical reason for patient to apply for disability. I told Dr. Guzman that though patient presents with depression I do not see it as debilitating enough for him to not at least work PT." [282.] Dr. Jean-Jacques's clinical note of October 10, 2014 noted little change from plaintiff during the year "due to inconsistent engagement in therapeutic recommendations." [313.] Meanwhile, plaintiff needed treatment for substance abuse from 1998 through 2005 and had an unspecified overdose in December 2008. [347.] As of 2012, plaintiff was a Treatment Court participant "who has showcased an inability to remain compliant with both treatment and court." [358.] Plaintiff was "currently enrolled in [a] substance abuse program" as of August 2014. [377; *but see* [382] ("clean of drugs and alcohol since 2012").] On April 5, 2012, plaintiff reported to Rochester General Hospital Addiction Services that his longest period of abstinence was in fact 13 years but that he last used cocaine one week earlier. [651.] Plaintiff himself reported using multiple substances through 2015 and 2016. [405–06.] The Commissioner has pointed to additional parts of the record indicating the same pattern as what the Court has cited above: a long history of dependency interrupted with some level of functioning and a desire to work during periods of sobriety. (*See* Dkt. No. 15-1 at 19, 21.) These circumstances suffice to persuade a reasonable mind that plaintiff's overall functioning and RFC would be better, as the ALJ has described, in the absence of substance abuse. *Cf. Cage*, 692 F.3d at 127 (2d Cir. 2012); *see also Smith v. Comm'r*, 731 F. App'x 28, 30 (2d Cir. 2018) (summary order) ("Smith's medical records showed that her depression, anxiety, and bipolar disorder symptoms were well-managed through medications and that her functioning improved when she underwent substance abuse treatment. Additionally, Smith

7

herself reported to her doctors that her substance abuse made her psychiatric conditions worse and that she experienced improvements when sober."); *Johnson v. Berryhill*, No. 17-CV-6436P, 2018 WL 4275985, at *15 (W.D.N.Y. Sept. 7, 2018) ("Although the record does not reflect that Johnson enjoyed prolonged periods of sobriety, it does reflect several periods of sustained sobriety during which Johnson generally reported decreased symptoms of depression and anxiety. The record was sufficient to permit the ALJ to conclude that Johnson's substance use was material to the finding of disability, and substantial evidence supports the finding.") (citation omitted). These circumstances also support the ALJ's method of discounting treatment providers who suggested functional limitations that would persist independent of substance abuse.

**III.     CONCLUSION**

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 15) and denies plaintiff's cross-motion (Dkt. No. 10).

The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                        __/s Hugh B. Scott_____
                                                        Hon. Hugh B. Scott
                                                        United States Magistrate Judge

DATED: July 31, 2019